UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Thomas B. McNamara

In re:

JENNIE ADELLE MAES,

Debtor.

Bankruptcy Case No. 19-17160 TBM
Chapter 13

___

**MEMORANDUM OPINION AND ORDER
ON DEBTOR'S MOTION TO DETERMINE AUTHORITY TO PROCEED**
___

### I. Introduction.

Suffering from severe dementia and memory loss, Jennie Adelle Maes (the "Debtor") — a poor, elderly widow living primarily off of Social Security benefits — forgot to make some of her monthly mortgage payments. So, her secured lender started foreclosure proceedings against her sole significant asset: her home. The Debtor's only daughter, Juanita Maes, caught wind of the circumstances and began to assist the Debtor in managing her financial affairs. She had the Debtor sign a power of attorney. Then, in order to stop the foreclosure proceedings and save the Debtor's only shelter, the Debtor's daughter filed a petition for relief under Chapter 13 of the Bankruptcy Code[1] for her mother. The Debtor's daughter signed the bankruptcy petition and other related bankruptcy documents this way: "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes." Next, the Debtor, through her daughter, filed a Chapter 13 Plan proposing to continue payments to the Debtor's lender as well as make up the missed mortgage payments over time. On its face, it appeared to be a solid effort to "reorganize" and save the Debtor's home while paying off the only secured creditor.

But, there was a problem. The power of attorney, upon which Juanita Maes relied, was not effective. The Chapter 13 Trustee, to his credit, identified the issue. All the parties now agree (in retrospect) that the Debtor's daughter lacked valid written authorization to file bankruptcy for her mother. It turns out that Juanita Maes was not an "attorney-in-fact" for the Debtor. So, the Chapter 13 Trustee requested that the Court deny confirmation of the Debtor's proposed Chapter 13 Plan and dismiss the bankruptcy case or convert it to a liquidation under Chapter 7.

No longer able to rely upon any alleged "attorney-in-fact" status under the ineffective power of attorney, Debtor's counsel shifted to another potential legal basis to

---

[1] All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

1

justify Juanita Maes' actions and maintain the bankruptcy case. The Debtor, through her daughter and counsel, contends that the insolvency proceedings are still valid and may proceed in Chapter 13 pursuant to Fed. R. Bankr. P. 1004.1 because the Debtor was "incompetent" when the bankruptcy petition was filed by her daughter, who qualifies as her "next friend."

To resolve this thorny and technical legal dilemma, the Court must assess the Debtor's competency and her daughter's role in filing the bankruptcy petition. In the end, the Court concludes that the Debtor was (and is) incompetent to make her own financial decisions by virtue of her severe dementia and memory loss. In these circumstances, even though the Debtor's daughter had no effective authorization as an "attorney-in-fact" under a power of attorney, she still was permitted to act as her mother's "next friend" to protect her mother's best interests. That is what she did. Thus, the bankruptcy petition was valid and the bankruptcy case may continue. However, going forward, Juanita Maes' role must be formalized. The Court appoints the Debtor's daughter as her "guardian ad litem" and fiduciary solely for purposes of this bankruptcy case.

## II. **Jurisdiction and Venue**.

This Court has jurisdiction to enter final judgment on the issues presented in this bankruptcy case pursuant to 28 U.S.C. § 1334. The dispute is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(L) (confirmation of plans), and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III. **Procedural Background**.

This bankruptcy case was commenced by the filing of a Petition for relief under Chapter 13 of the Bankruptcy Code on August 19, 2019.[2] The Debtor did not sign the Petition. Instead, the Petition was signed and filed by "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes."[3] The Debtor's Statement of Financial Affairs and Schedules also were signed and filed by "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes," not by the Debtor.[4]

---

[2] Docket No. 1 at 1-7; *see also* Ex. 1 at 1-7 and Exs. J & K at 1-7 (the "Petition"). When referring to a document filed in the CM/ECF record for this case, the Court will use the convention "Docket No. ___" to identify the document. Docket No. 1 in this case includes the Petition, the Statement of Financial Affairs, and Schedules. The Petition is at pages 1 through 7 as indicated above; the Statement of Financial Affairs is in Docket No. 1 at pages 8 through 14 (the "SOFA"); and the Schedules are in Docket No. 1 at pages 17 through 40 (the "Schedules"). The Chapter 13 Trustee marked the Petition as Exhibit 1 and the SOFA as Exhibit 2. The Debtor marked the Petition, SOFA and Schedules as Exhibits J and K. The Parties stipulated to the admissibility of all exhibits. Thus, the entirety of Docket No. 1 has been admitted into evidence. For the sake of clarity, when referring to the Petition, the SOFA or Schedules in this Opinion and Order, this Court will cite to Docket No. 1 only and not to the related Exhibit number or letter assigned to it by the Parties.
[3] Docket No. 1 at 6.
[4] Docket No. 1 at 14 and 40.

The same day the Petition was filed, the Debtor proposed a Chapter 13 Plan.[5] As with the other Court filings, "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes," not the Debtor, signed and verified the Chapter 13 Plan.[6] All payments proposed under the Chapter 13 Plan have been made on time so far.[7] In bankruptcy vernacular, the Debtor is "current with plan payments."[8]

The Chapter 13 Trustee objected to the Chapter 13 Plan.[9] In the Plan Objection, the Chapter 13 Trustee stated:

> The petition was signed by a power of attorney, however, based upon the information provided at the meeting of creditors, the power of attorney provided to the Trustee may not be valid. Debtor was not in attendance at the meeting of creditors and upon information provided it is possible that the Debtor did not have the requisite capacity to sign the power of attorney and there has not been a court determination to determine the Debtor's capacity.

Based upon the foregoing, the Chapter 13 Trustee requested that the Court deny confirmation of the Chapter 13 Plan and dismiss or convert the bankruptcy case.[10] The Chapter 13 Trustee presented no objections to confirmation of the Chapter 13 Plan other than the capacity objection.

Subsequently, the Debtor (through counsel) filed a "Motion to Determine Authority to Proceed."[11] In the Motion to Determine Authority, the Debtor's counsel recited that the Debtor's daughter, Juanita Maes, had initiated contact concerning a possible bankruptcy filing. Debtor's counsel advised Juanita Maes that she needed to have a valid power of attorney to file a case on the Debtor's behalf. According to Debtor's counsel, Juanita Maes provided two powers of attorney: one power of attorney was not executed; the other power of attorney was not effective. However, the Debtor's counsel filed the bankruptcy Petition anyway. After the bankruptcy, the Debtor apparently signed yet another power of attorney. In any event, the Debtor, through the Debtor's counsel, requested that the Court "allow the case to proceed by and through her power of attorney agent Juanita Maes, Jennie Maes' daughter."[12]

---

[5] Docket No. 2 (the "Chapter 13 Plan")
[6] *Id.* at 8.
[7] Statement of Stipulation Facts No. 16 (Docket No. 52, hereinafter, "Stip. Fact No.___").
[8] *Id.*
[9] Docket No. 22 (the "Plan Objection"). Secured creditor J.P. Morgan Chase, N.A. also objected to the Chapter 13 Plan. (Docket No. 23.) However, that objection was focused narrowly on the debt owed to J.P. Morgan Chase, N.A., and did not raise the issue of the Juanita Maes' capacity to pursue bankruptcy protection for the Debtor.
[10] Plan Objection at 1.
[11] Docket No. 31 (the "Motion to Determine Authority").
[12] *Id.*

3

Thereafter, the Chapter 13 Trustee objected to the Motion to Determine Authority. The Chapter 13 Trustee argued that all three of the Powers of Attorney were invalid for various reasons. Citing Fed. R. Bankr. Pro. 1004.1, the Chapter 13 Trustee suggested that "it may be appropriate for the Court to consider appointing a guardian ad litem for the Debtor in order for the case to proceed."[13]

The Court conducted a non-evidentiary hearing on the Motion to Determine Authority.[14] At the hearing, Debtor's counsel conceded that Juanita Maes did not have a valid power of attorney at the time the bankruptcy case was filed. Further, Debtor's counsel and the Chapter 13 Trustee agreed that an evidentiary hearing would be required to determine: (1) whether the Debtor was incompetent at the time her daughter filed the Petition in this case; (2) if the Debtor was in fact incompetent, whether Juanita Maes properly may be considered a "next friend" of the Debtor; and (3) whether the Court should appoint a guardian ad litem or issue any other protective order for the benefit of the Debtor. Accordingly, the Court set an evidentiary hearing on the capacity issues.

Thereafter, both the Debtor's counsel and the Chapter 13 Trustee submitted simultaneous legal briefs addressing the legal and factual issues.[15] At the Parties' request, the Court set a trial on March 20, 2020. However, the Parties later agreed to forego an evidentiary hearing and instead submit the issues for consideration by the Court based only upon: (1) a Statement of Stipulated Facts[16]; (2) an Affidavit of Dr. William Bauer[17]; (3) an Affidavit of Juanita Maes[18]; (4) the Debtor's Exhibits A-L; and (5) the Chapter 13 Trustee's Exhibits 1-6.[19]

The Court took the matter under advisement. Subsequently, the Court reviewed all the foregoing evidence and written legal arguments submitted by the Parties. The Court concurs that it has a sufficient factual record upon which to reach legal conclusions on the various legal issues presented by the Parties.

## IV. Findings of Fact

Based upon the evidentiary record presented by the Parties, the Court makes the following findings of fact under Fed. R. Civ. P. 52(a)(1), as incorporated by Fed. R. Bankr. P. 7052.

---

[13] Docket No. 34.
[14] Docket No. 38.
[15] Docket Nos. 42 and 43.
[16] Docket No. 52.
[17] Docket No. 50.
[18] Docket No. 51.
[19] *See* Docket No. 53 (Parties stipulated to admissibility into evidence of all their respective exhibits); Docket No. 66 (Debtor contends "any further evidentiary hearing is unnecessary); and Docket No. 67 (Chapter 13 Trustee states "the record in this case now contains sufficient information and documentation for the Court to decide the contested matter at issue without the need for an evidentiary hearing").

4

**A.     The Debtor and Her Family, Income, Assets, and Debts.**

The Debtor is an 84-year old widow whose parents are deceased.[20] She has one surviving sister and four adult children.[21] Her eldest son is William Maes. He is 55 years old, suffers from schizoaffective disorder, and lives with the Debtor.[22] The Debtor's second son is Daniel Maes. He is 52 years old, suffers from schizophrenia and resides in an assisted living facility: Alpine Living Center.[23] The Debtor's third son is Chris Maes. He is 51 years old and resides with the Debtor.[24] Finally, the Debtor's youngest child is her only daughter: Juanita Maes. She is 46 years old and lives in Westminster, Colorado.[25]

The Debtor is unemployed.[26] Her sole source of income is Social Security benefits and family financial support.[27] She receives monthly social security benefits of $986 and a monthly contribution of about $900 from one of her sons.[28] After subtracting her expenses, the Debtor has about $286 in monthly net income.[29] It is not much.

The Debtor has very few assets. She owns some household goods, clothes, a coin collection, and a bank account all of fairly nominal value.[30] Her only significant asset is her three-bedroom home located at located at 745 S. 4th Ave., Brighton, Colorado (the "Real Property.")[31] She owns the Real Property and lives there along with her sons William and Chris Maes.[32] According to the Debtor's Schedules, the Real Property is worth $226,039.[33] However, the Real Property is encumbered by a mortgage held by J.P. Morgan Chase Bank, N.A. (the "Bank").[34] When the bankruptcy case was filed, the Debtor asserted that she owed about $131,800 on the secured debt.[35] The Bank filed a slightly larger proof of claim for $132,381, including $6,967 in pre-petition arrearages.[36] The Debtor's other debts are nominal. Only two parties filed unsecured claims which, together, total $4,911.[37] And, the claims bar date has passed.[38]

---

[20]   Stip. Fact Nos. 2 and 8.
[21]   Stip. Fact Nos. 7 and 9.
[22]   Stip. Fact No. 7(d).
[23]   Stip. Fact No. 7(c).
[24]   Stip. Fact No. 7(b).
[25]   Stip. Fact No. 7(a).
[26]   Docket No. 1 at 8 and 36.
[27]   *Id.* at 9 and 37.
[28]   *Id.* and Stip. Fact No. 15.
[29]   Docket No. 1 at 39.
[30]   *Id.* at 18-19.
[31]   *Id.* at 17 and Stip. Fact. No. 11.
[32]   *Id.* and Stip. Fact Nos. 7(b) and 7(d).
[33]   Docket No. 1 at 17.
[34]   *Id.* at 24.
[35]   *Id.*
[36]   Stip. Fact No. 12.
[37]   Stip. Fact No. 13.
[38]   Stip. Fact No. 14.

The Debtor, through her daughter, filed for Chapter 13 bankruptcy protection to save the Debtor's home from imminent foreclosure by the Bank. As set forth below, the Debtor suffered (and continues to suffer) from severe dementia and memory loss such that she forgot or failed to timely pay her home mortgage of about $719 per month. She got behind and was about to lose the only shelter she had for herself and her two sons.

### B.  The Debtor's Medical Condition.

The Debtor suffers from poor health. She has chronic kidney disease, hypertension, and hypothyroidism.[39] More recently (but before her bankruptcy filing), she developed severe dementia and memory loss.[40] Just a few months before the Petition, the Debtor visited one of her primary physicians: Dr. William Joseph Bauer. He reaffirmed a diagnosis of severe dementia and opined that she "would not be able to complete her routine financial affairs."[41] Later, Dr. Bauer provided an Affidavit stating:

> It is my opinion that Jennie Maes was incapable of handling her financial affairs on August 19, 2019 and that she remains incapable of handling her financial affairs.[42]

Although not medical professionals, the Debtor's family also concurs that the Debtor suffers from severe dementia and memory loss. The Debtor's daughter, Juanita Maes testified that "my mother suffers from severe dementia" and "my mother . . . has been having difficulty for some time now due to dementia. She has become increasingly forgetful . . . ."[43] The Debtor's son, Chris Maes, stated that "my mother . . . has been suffering with Dementia and has had difficulty with handling finances . . . ."[44] The Debtor's sister agreed too.[45]

The Court has received no contrary evidence about the Debtor's severe dementia. Indeed, the Parties stipulated:

> Debtor currently suffers from severe dementia and was suffering from severe dementia at the time of filing of her bankruptcy petition.[46]

Thus, the Court finds that the Debtor had severe dementia when she filed for bankruptcy protection (through her daughter) and the Debtor was not able to manage her financial affairs. Further, those conditions have continued to the present.

---

[39] Stip. Fact No. 3; Exs. A and L.
[40] Ex. L; *see also* Stip. Fact No. 4.
[41] Exs. A and L.
[42] Docket No. 50.
[43] Docket No. 51 and Ex. C.
[44] Ex. D.
[45] Ex. E.
[46] Stip. Fact No. 4.

6

C. **Juanita Maes' Role in Assisting the Debtor and Filing for Bankruptcy.**

Juanita Maes is the Debtor's only daughter. She is employed as a Resident Medication Assistant at Atria Westminster.[47] She appears to have her mother's best interests in mind and at heart. For example, she has accompanied her mother to most of her regular medical appointments.[48] After she became aware of her mother's memory loss and dementia, she started to "help take care of [the Debtor's] finances in April 2019."[49] She discovered that her mother was forgetting to make her monthly mortgage payments to the Bank and, as a result, the Bank commenced foreclosure proceedings on the Real Property.[50] She stepped in to try to assist in the Debtor's finances. She engaged bankruptcy counsel and directed the filing of the bankruptcy Petition for her mother. The Parties stipulated that "Debtor's case was filed at the direction of her daughter, Juanita Maes, as next friend."[51]

Juanita Maes is willing to continue to assist her mother. She testified:

> I am aware of all my mother's financial obligations and am able to assist her is making sure all payments are made. I arrange and take my mother to all of her necessary appointments. I am able to continue to care for my mother as care taker for both her medical and financial needs. I have not gained any financial benefit from assisting my mother with her affairs, not do I seek any compensation.[52]

Juanita Maes, her brother, Chris Maes, and her maternal aunt, Frances Hunter, all concur that it would be in the Debtor's best interests for Juanita Maes to continue to manage her mother's affairs and make financial decisions for the Debtor.[53] No party has come forward to argue otherwise.[54]

D. **The Lack of Legal Authorization.**

When she directed that the Petition be filed commencing this bankruptcy case for her mother, Juanita Maes believed that she was authorized to do so by virtue of a Power of Attorney.[55] Thus, she signed the Petition and other required bankruptcy

---

[47] Docket No. 51 and Exs. F and G.
[48] Exs. B and L and Docket No. 51.
[49] Docket No. 51.
[50] *Id.*
[51] Stip. Fact No. 5.
[52] Docket No. 51.
[53] Exs. C-E.
[54] The Chapter 13 Trustee and the Debtor has submitted information concerning Juanita Maes' criminal history. (Ex. 6 and Ex. H.) That history shows that Juanita Maes was cited for a single misdemeanor offense in the last ten years; and that she was arrested on other occasions long ago. Neither Party has suggested that such episodes disqualify Juanita Maes from caring for her mother or for making her payments under her Chapter 13 Plan in this Bankruptcy Case. Thus, the Court views that information as irrelevant.
[55] Ex. C.

7

documents as "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes." She was mistaken.

The Debtor signed a "General Durable Power of Attorney" on June 14, 2019 whereby the Debtor purported to appoint Juanita Maes as her agent for financial affairs and other purposes.[56] However, according to the terms of the First POA, it "will only become effective" if: (1) two physicians provide written opinions that the Debtor cannot effectively manage my property or financial; (2) a court of competent jurisdiction declares that the Debtor is disabled, incompetent, or legally incapacitated; or (3) the Debtor is incapacitated by virtue of having disappeared for more than thirty days or having been detained under duress. The Court has not received any evidence establishing that any of the conditions for the First POA to become effective occurred. Furthermore, the First POA was executed by the Debtor at a time when she already had been diagnosed with severe dementia. Accordingly, the Court questions the capacity of the Debtor to execute the First POA.

Given the problems with the First POA, the Debtor executed a second "General Durable Power of Attorney" on October 11, 2019.[57] The Second POA did not have the conditions for effectiveness like the First POA. Instead, the Second POA purported to become effective "as of the date of this instrument." However, the POA was executed after the Petition date and is quite suspect since the Debtor already had been diagnosed with severe dementia.

In any event, the Debtor has expressly conceded, through counsel, that neither the First POA nor the Second POA were effective to authorize Juanita Maes to file the bankruptcy Petition for the Debtor. Furthermore, as of the Petition date, no guardian, conservator, or other representative had been appointed for the Debtor by any court or otherwise.[58]

### V. Conclusions of Law

**A. General Legal Framework Governing Executing a Petition and an Incompetent Debtor.**

The Bankruptcy Code does not expressly mandate that a bankruptcy debtor sign the petition and most other bankruptcy documents. *In re Benton*, 2016 WL 721487, at *6-7 (Bankr. E.D. Mich. Feb. 12, 2016). The closest statute is Section 301(a) which merely provides:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.

---

[56] Ex. 3, the "First POA."
[57] Ex. 4, the "Second POA."
[58] Stip. Fact No. 10.

8

11 U.S.C. § 301(a). Section 302(a) is virtually identical in the context of "joint cases." The statutory text is focused on "filing," not signing the petition. And, the Code does not require that every debtor actually come to Court to "file" a petition. Instead, in most cases the filing exercise is performed, as it was in this case, by counsel through electronic means. "Neither statute [Section 301 or 302] requires or states that the petition must be signed by the debtor . . . ." *Benton*, 2016 WL 721487, at *6.

In the absence of a statutory signature requirement, the Court looks to the governing procedural rules. Fed. R. Bankr. P. 1002 is similar to Section 301 and focuses on filing: "A petition commencing a case under the Code shall be filed with the clerk." Fed. R. Bankr. P. 1007 also requires that a debtor "shall file" various documents including a Statement of Financial Affairs and Schedules. But, again, that mandate does not require that those documents be executed by a debtor. Fed. R. Bankr. P. 1008 requires that "[a]ll petitions, lists, schedules, statements and amendments thereto shall be verified or contain an unsworn declaration as provided in 28 U.S.C. § 1746." So, someone must sign; but Fed. R. Bankr. P. 1008 does not indicate that it must be a debtor. Fed. R. Bankr. P. 9011(a) deals mainly with attorneys and requires that "[e]very petition, . . . schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name." Debtor's counsel did that. Fed. R. Bankr. P. 9011(a) goes on to state: "A party who is not represented by an attorney shall sign all papers." But that provision does not apply in this case since the Debtor is represented by counsel.

There is a debtor signature requirement, but it takes some digging and cross-referencing to find. Fed. R. Bankr. P. 9009 deals with bankruptcy forms and provides: ". . . the Official Forms prescribed by the Judicial Conference of the United States shall be observed . . . ." The Judicial Conference of the United States has prescribed numerous Official Forms including forms of the Petition, SOFA, and Schedules. *See* Official Form Nos. 101, 106, and 107. Those documents do require a "Signature of Debtor" (or someone otherwise properly authorized to sign for a debtor). *See In re Vitagliano*, 303 B.R. 292, 293 (Bankr. W.D.N.Y. 2003) (referring to Fed. R. Bankr. P. 9009 and Official Form No. [10]1 as the basis of the requirement for the debtor to sign the petition). Thus, "Debtors must sign the petition, Schedules, and SOFA as a means of not only authorizing the filing of these documents, but of verifying, under penalty of perjury, that they have reviewed the information contained therein and that it is true and correct to the best of their knowledge, information, and belief." *In re Stomberg*, 487 B.R. 775, 807 (Bankr. S.D. Tex. 2013); *see also In re Veluz*, 2015 WL 161002, at *2 (Bankr. D.N.J. Jan. 12, 2015) ("a debtor is required to sign the petition.").

In this case, the Debtor did not herself execute and file the Petition and the other required bankruptcy documents. Instead, her daughter, Juanita Maes, did. She signed with the following notation: "Juanita Maes, as attorney-in-fact for Jennie Adelle Maes." However, Juanita Maes acted based upon a mistaken understanding.

Under the Colorado Uniform Power of Attorney Act, COLO. REV. STAT. § 15-14-701 *et seq.* (the "CUPOA"):

9

> An attorney-in-fact under a valid power of attorney [covering claims and litigation] . . . has the right to file a petition for bankruptcy relief and otherwise participate in a bankruptcy proceeding for the principal . . . unless the power of attorney provides otherwise.

*In re Sniff*, 2015 WL 7351477, at *5 (Bankr. D. Colo. Oct. 6, 2015) (citing COLO. REV. STAT. § 15-14-735(1)(g)).  However, the First POA never became effective and the Second POA was signed after the bankruptcy filing while the Debtor was incompetent.  So, Juanita Maes was not an "attorney-in-fact" for the Debtor and was not properly authorized to direct that the Petition be filed under the CUPOA.

In the absence of authority under the First POA, the Second POA, and the CUPOA, the Debtor's counsel argues that a different set of rules governs if the Debtor is "incompetent."  Fed. R. Bankr. P. 1004.1 is titled "Petition for an Infant or Incompetent Person" and provides as follows:

> If an infant or incompetent person has a representative, including a general guardian, committee, conservator, or similar fiduciary, the representative may file a voluntary petition on behalf of the infant or incompetent person.  An infant or incompetent person who does not have a duly appointed representative may file a voluntary petition by next friend or guardian ad litem.  The court shall appoint a guardian ad litem for an infant or incompetent person who is a debtor and is not otherwise represented or shall make any other order to protect the infant or incompetent debtor.

Fed. R. Bankr. P. 1004.1 mirrors Fed. R. Civ. P. 17(c) and was added to the Federal Rules of Bankruptcy Procedure in 2002 to address, among other things, recurring issues governing bankruptcy filings on behalf of incompetent persons and whether bankruptcy courts are authorized to appoint guardians ad litem.  Fed. R. Bankr. P. 1004.1 generally applies when a debtor is incompetent at the time of the commencement of the bankruptcy case, while a companion procedural rule, Fed. R. Bankr. P. 1016, applies if a debtor becomes incompetent during the pendency of the bankruptcy case.  Fed. R. Bankr. P. 1016 is titled "Death or Incompetency of Debtor" and provides the following:

> Death or incompetency of the debtor shall not abate a liquidation case under chapter 7 of the Code. In such event the estate shall be administered and the case concluded in the same manner, so far as possible, as though the death or incompetency had not occurred. If a reorganization, family farmer's debt adjustment, or individual's debt adjustment case is pending under chapter 11, chapter 12, or chapter 13, the case may be dismissed; or if further administration

10

>   is possible and in the best interest of the parties, the case may proceed and be concluded in the same manner, so far as possible, as though the death or incompetency had not occurred.

These procedural rules require the Court to engage in a decision tree of determinations when incompetency issues are raised. First, the Court must decide whether the Debtor was incompetent when the Petition was filed on August 19, 2019, or whether the Debtor became incompetent after the commencement of the bankruptcy case. If the former, then Fed. R. Bankr. P. 1004.1 applies; if the later, then Fed. R. Bankr. P. 1016 applies. *Sniff*, 2015 WL 7351477, at *2.

If Fed. R. Bankr. P. 1004.1 is applicable, then the Court must determine if the Debtor had a formal "representative" at the time of the bankruptcy Petition such as a "general guardian, committee, conservator, or similar fiduciary" and whether that person filed the bankruptcy Petition. *Sniff*, 2015 WL 7351477, at *3 (Fed. R. Bankr. P. 1004.1 "make[s] a threshold distinction between whether the incompetent person is *represented* or *not represented*.") If the Debtor had no formal "representative," then the Court must decide whether the bankruptcy Petition was filed by a "next friend or guardian ad litem*."* If a guardian ad litem initiated and signed the bankruptcy petition, the inquiry is complete and the case may proceed. However, if only a "next friend" started the bankruptcy proceedings, then the Court must appoint a guardian ad litem or take other action to protect the incompetent debtor; the Court cannot just let the "next friend" continue along in prosecuting the bankruptcy case. *Sniff*, 2015 WL 7351477, at *3 ("if there is no representative, then the Court may appoint a representative"). So, now, the Court addresses the foregoing issues.

**B.    The Debtor Was Incompetent When Her Daughter Signed and Filed the Petition.**

Incompetency determinations are not the common province of bankruptcy courts. Indeed, neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define the term "incompetency." *See, e.g., Sniff,* 2015 WL 7351477, at *3; *In re Petrano*, 2013 WL 6503672, at *2 (Bankr. N.D. Fla. Apr. 16, 2013); *In re Whitehead*, 2005 WL 1819399, at * 1 (Bankr. M.D.N.C. July 22, 2005) (citing *In re Moss*, 239 B.R. 537, 539 (Bankr. W.D. Mis. 1999)). In the absence of express statutory authority to determine incompetency, at least some bankruptcy courts have deferred and required such determinations to be made only in state court. *Petrano*, 2013 WL 6503672, at *4. However, Fed. R. Bankr. P. 1004.1 provides authorization for incompetency determinations. Most bankruptcy courts willing to delve into the issue have engaged in an assessment under state law. *Sniff,* 2015 WL 7351477, at *3; *In re Soto*, 534 B.R. 460, 464 (Bankr. D.P.R. 2015) (applying Puerto Rico law); *In re Douglas*, 2006 WL 4449695, at *1 (Bankr. W.D. Mo. Sept. 14, 2006) (applying Missouri law); *Whitehead*, 2005 WL 1819399, at *2 (citing *Moss*, 239 B.R. at 539 ("since there is no federal law on the determination of incompetency, which has traditionally been left to state law, the incompetency laws of the state of the debtor's domicile must be examined for guidance on the matter")). Courts construing analogous Fed. R. Civ. P. 17(c) also generally apply

11

state law governing incompetency. *Moody v. Smith (In re Moody)*, 105 B.R. 368, 372 (S.D. Tex. 1989) (applying Texas state law under Fed. R. Civ. P. 17(c)); *Moss,* 239 B.R. 537 (endorsing use of state law before adoption of Fed. R. Bankr. P. 1004.1). The Court agrees that under Fed. R. Bankr. P. 1004.1 the Court is fully authorized to make a determination of incompetency for bankruptcy purposes in appropriate circumstances.

Colorado law provides for incompetency determinations in numerous contexts such as criminal proceedings, commitment proceedings, involuntary medical treatment, and otherwise. Although the definitions vary, the central consideration is whether the individual is incapable of participating effectively in communication and decision-making. *See, e.g., Sniff,* 2015 WL 7351477, at *3; *People ex Rel. Strodtman*, 293 P.3d 123, 132 (Colo. App. 2011) (explaining incompetency determination in involuntary medical treatment case); *see also* COLO. REV. STAT. §§ 16-8.5-101(11) and 102(2)(a) (defining phrase "incompetent to proceed" in various criminal contexts); COLO. REV. STAT. § 27-65-101 *et seq.* (containing various definitions pertaining to mental health). The Colorado approach comports with common understanding of the term "incompetent." *See* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 889 (Houghton Mifflin Harcourt, Fifth Ed. 2011) ("incompetent" means "lacking sufficient mental ability or awareness").

The term "incapacity" is similar. Under Colorado law, an incapacitated person means:

> . . . an individual . . . who is unable to effectively receive or evaluate information or both to make or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care . . . .

COLO. REV. STAT. § 15-14-102(5). Even though the Bankruptcy Code does not define the word "incompetent", it does define the analogous term "incapacity" in a similar way to Colorado law but focusing on financial issues:

> . . . incapacity means that the debtor is impaired by reason of mental illness or mental deficiency so that he is incapable of realizing and making rational decisions with respect to his financial responsibilities . . . .

11 U.S.C. § 109(h)(4).

Although the Court might prefer to abstain so that contested and complicated incompetency disputes may be adjudicated in state court under state law (for example, by abstention under 28 U.S.C. § 1334(c)(1)), fortunately, this bankruptcy case presents a very easy factual scenario that makes abstention unnecessary. Every shred of admissible evidence confirms that the Debtor was incompetent when her daughter signed and filed the Petition on August 19, 2019. She has (and still has) severe dementia and memory loss. Her physician, Dr. Bauer, and three close relatives

12

confirmed as much.  Dr. Bauer also opined that the Debtor "was incapable of handling her financial affairs on August 19, 2019 and that she remains incapable of handling her financial affairs."

There is no contrary evidence.  Instead, even the Parties stipulated:

> Debtor currently suffers from severe dementia and was suffering from severe dementia at the time of filing of her bankruptcy petition.

Since the Debtor was unable to participate effectively in communication and decision-making about her financial condition when her daughter filed for bankruptcy protection, the Debtor was incompetent under Fed. R. Bankr. P. 1004.1.  Indeed, the Court concludes that severe dementia and memory loss are archetypical examples of incompetency.[59]

### C. The Debtor Did Not Have a Representative When Her Daughter Signed and Filed the Petition.

The next issue in the decision sequence is whether the Debtor had a "representative" when Juanita Maes signed and filed the Petition.  Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define the word "representative."  However, Fed. R. Bankr. P. 1004.1 gives illustrative examples: "a general guardian, committee, conservator, or similar fiduciary."  Fed. R. Civ. P. 17(c), the model for Fed. R. Bankr. P. 1004.1, also lists the examples of a "representative."  The holder of a valid durable power of attorney also may qualify as *a* representative under Fed. R. Bankr. P. 1004.1 — without a separate appointment by the bankruptcy court.  *See Sniff,* 2015 WL 7351477, at *4; *In re Drenth*, 2015 WL 5331797 (Bankr. W.D. Mich. Sept. 10, 2015); *In re Matthews*, 516 B.R. 99, 102 (Bankr. N.D. Tex. 2014) (citing *United States v. Spurlin*, 664 F.3d 954, 959 (5th Cir. 2011) ("a general power of attorney may be used to file a bankruptcy on another's behalf")); *In re James*, 2005 WL 6443631 (Bankr. N.D. Tex. Oct. 18, 2005) (confirming that debtor's daughter may act for incapacitated debtor in bankruptcy case under power of attorney granting authority regarding claims and litigation).

The Debtor did not have a general guardian, committee, or conservator at the commencement of the bankruptcy case.  Furthermore, because neither the First POA nor Second POA was effective, the Debtor did not have an agent under an effective and valid durable power of attorney.  There is no evidence that anyone else acted in a fiduciary capacity *vis-à-vis* the Debtor.  Thus, the Debtor did not have a "representative" within the meaning of Fed. R. Bankr. P. 1004.1 when her daughter signed and filed the Petition.

---

[59] The Court's incompetency determination is made only with respect to the Debtor's financial affairs and for purposes of this bankruptcy case.  This determination shall have no impact in other areas such as medical treatment decision-making or otherwise.

13

### D.   Juanita Maes Was the Debtor's Next Friend.

If a debtor is incompetent but does not have a representative, Fed. R. Bankr. P. 1004.1 allows a "next friend or guardian ad litem" to file for bankruptcy on behalf of such debtor. So, the next question is whether Juanita Maes qualified as a "next friend or guardian ad litem" when she signed and filed the Petition for her mother.

The term "guardian ad litem" is not defined in either the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. However, etymologically the phrase has Latin roots and means guardian "for the lawsuit" or "for the litigation." *See, e.g.,* AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 780 (Houghton Mifflin Harcourt, Fifth Ed. 2011) ("guardian ad litem" means "a person appointed by the court during litigation to protect the interests of a party who is incompetent."); Bryan A. Garner, BLACK'S LAW DICTIONARY 780 (Thompson Reuters, Tenth Ed. 2014) ("guardian ad litem" means "a guardian, usually a lawyer, appointed by the court to appear in a lawsuit on behalf of an incompetent or minor party.").

Colorado state law similarly ties the appointment of a "guardian ad litem" to a specific proceeding or lawsuit. For example, COLO. REV. STAT. § 13-91-103 defines the term "guardian ad litem" as "a person appointed by a court to act in the best interests [of a child in a dependency or neglect proceeding] . . . ." Likewise, COLO. REV. STAT. § 19-1-103(59) provides that a "guardian ad litem" is "a person appointed by a court to act in the best interests of a person . . . ."

In this bankruptcy case, Juanita Maes was not her mother's guardian ad litem because no court appointed her to be a guardian for purposes of any lawsuit or litigation, including for the filing of a bankruptcy petition. So, the Court must assess whether Juanita Maes qualifies as the Debtor's "next friend" under Fed. R. Bankr. P. 1004.1.

In the bankruptcy context, the term "next friend" is "broad enough to include anyone who has an interest in the welfare of an infant [or incompetent person] who may have a grievance or a cause of action." *In re Zawisza*, 73 B.R. 929, 936 (Bankr. E.D. Penn. 1987) (quoting *Child v. Beame,* 412 F. Supp. 593, 599 (S.D.N.Y. 1976) (construing Fed. R. Civ. P. 17(c)). A "next friend" is different than a "guardian ad litem." The main difference is that a "next friend" is not appointed by a court and does not have any fiduciary obligations.

A few decades ago, the United States Supreme Court construed the term "next friend" in the context of court appearances in *habeas corpus* proceedings on behalf of detained prisoners. *Whitmore v. Arkansas*, 495 U.S. 149 (1990). Although *habeas corpus* cases obviously are quite different than bankruptcy proceedings, the "next friend" concept is analogous. The Supreme Court stated:

> First, a "next friend" must provide an adequate explanation — such as inaccessibility, mental incompetence, or other disability — why the real party in interest cannot appear on

14

>his own behalf to prosecute the action. Second, the "next friend" must be truly dedicated to the best interests of the person on whose behalf he seeks to litigate, and it has been further suggested that a "next friend" must have some significant relationship with the real party in interest. The burden is on the "next friend" clearly to establish the propriety of his status . . . .

*Witmore,* 495 U.S. at 163-64. This analysis of next friend status also makes abundant good sense as applied in the context of Fed. R. Bankr. P. 1004.1.

Juanita Maes has met her burden to prove her status as next friend *vis-à-vis* the Debtor. First, there is a very solid reason why the Debtor could not appear on her own behalf to sign the Petition and all the other bankruptcy documents. The Debtor has severe dementia and memory loss. Her treating physician has testified that she is incapable of making financial decisions. Second, Juanita Maes has demonstrated that she is dedicated to the interests of the Debtor. Juanita Maes has a "significant relationship" with the Debtor who is her mother; and she is her only daughter. The mother-daughter relationship is sacrosanct. And, Juanita Maes has proven that she has done her best to take care of her mother. She is her mother's caregiver. She takes her mother to her medical and other appointments. And, after she learned of her mother's failing mental health, she took it upon herself to assist in her mother's financial obligations by making sure that debts were paid so her mother could stay in her house and have shelter. She did what every mother hopes a loyal and caring daughter would do. Furthermore, she did it for no compensation and no expectation of ever being paid anything for her efforts on her mother's behalf. Even the Parties stipulated: "Debtor's case was filed at the direction of her daughter, Juanita Maes, as next friend." Thus, the Court rather easily concludes that Juanita Maes qualifies as the Debtor's next friend under Fed. R. Bankr. P. 1004.1.

### E. The Court Appoints Juanita Maes as the Debtor's Guardian Ad Litem for Purposes of the Bankruptcy Proceedings.

Most guardian ad litem appointments are made in the context of state court proceedings. Until 2002, there was an open legal question whether bankruptcy courts were authorized to appoint guardians ad litem in main bankruptcy cases. That changed with the enactment of Fed. R. Bankr. P. 1004.1. The last sentence of that Rule now provides that authorization. The Rule requires the appointment of guardians ad litem, not next friends, in circumstances like this bankruptcy case:

>The court shall appoint a guardian ad litem for an infant or incompetent person who is a debtor and is not otherwise represented or shall make any other order to protect the infant or incompetent person.

As set forth above, the Court already has determined that the Debtor was incompetent when the Petition was filed, and remains so, and that the Debtor did not, and does not,

15

have a "representative." Instead, Juanita Maes has acted only in the capacity of a "next friend." However, a next friend is not a fiduciary. Under these circumstances, Fed. R. Bankr. P. 1004.1 dictates that the Court now appoint a guardian ad litem or make any other order to protect the Debtor. *See In re McGlohon*, 2016 WL 552332, at *1 (Bankr. E.D.N.C. Feb. 10, 2016) ("While 'unusual and extraordinary,' the appointment of a guardian ad litem for an incompetent debtor by a bankruptcy court is available and provided for in Rule 1004.1."); *In re Benson*, 2010 WL 2016891, at *2-3 (Bankr. N.D. Ga. Apr. 30, 2010) (appointing a guardian ad litem); *Whitehead*, 2005 WL 1819399, at *4 (appointing a guardian ad litem).

The Debtor, through Debtor's counsel, apparently prefers another course and advocates:

> The best procedure [going] forward would be to appoint Juanita Maes (the Debtor's daughter) as next friend as she is qualified to act in the best interest of the debtor. An appointment of guardian ad litem is unnecessary as the debtor can be adequately protected through her next friend.[60]

There is legal authority for the appointment of a next friend. For example, in *In re Myers*, 350 B.R. 760, 764 (Bankr. N.D. Ohio 2006), a bankruptcy court appointed a debtor's wife as the debtor's next friend under Fed. R. Bankr. P. 1004.1. And, in *In re Lane*, 2012 WL 5296122 (Bankr. D. Or. Oct. 25, 2012), a bankruptcy court purported to develop an entire special procedure for the appointment of next friends in Oregon bankruptcy cases.

The Court respectfully disagrees with all decisions in which bankruptcy courts have elected to appoint a "next friend" rather than a "guardian ad litem" under Fed. R. Bankr. P. 1004.1. Such cases contain no real legal analysis or rationale for appointing a next friend. Quite simply, Fed. R. Bankr. P. 1004.1 does not authorize the bankruptcy court to appoint a next friend. It says no such thing. Instead, Fed. R. Bankr. P. 1004.1 explicitly speaks only to the appointment of a guardian ad litem. And, the Court is concerned that having a next friend administer a bankruptcy proceeding would be unclear and problematic. Next friends have no specific duties or obligations. In bankruptcy, it is critical for duties to be identified through the Bankruptcy Code and, in this Court's view, to be performed by a fiduciary if the Debtor is unable to perform the duties. Under a plain reading of Fed. R. Bankr. P. 1004.1, the Court is not permitted to appoint Juanita Maes as the Debtor's next friend.

Instead, the Court determines that it must appoint a guardian ad litem. Juanita Maes fits the bill in the unique circumstances of this case. She has a special relationship with the Debtor as her daughter. She has assisted the Debtor with financial matters for about a year. She is willing to continue to assist her mother and testified: "I am aware of all my mother's financial obligations and am able to assist her is making

---

[60] Docket No. 42.

16

sure all payments are made . . . . I am able to continue to care for my mother as care taker for both her medical and financial needs." She has acted in the Debtor's best interests. In this case, there are no funds to pay for a third-party guardian ad litem. Juanita Maes stated: "I have not gained any financial benefit from assisting my mother with her affairs, not do I seek any compensation." That is important. Also, Juanita Maes' brother and maternal aunt have testified that Juanita Maes has the Debtor's best interests in mind and should continue to assist in making financial decisions for the Debtor. The practical reality is that, acting on her mother's behalf, Juanita Maes has been successful so far in saving the Debtor's Real Property and timely making all payments proposed in the Debtor's Chapter 13 Plan. And, there is no one else to step in as guardian ad litem.

So, the Court appoints Juanita Maes as a guardian ad litem for the limited purpose of prosecuting and administering this bankruptcy case on behalf of the Debtor. This appointment shall not extend to other matters such as medical decision-making. If Juanita Maes wishes to expand her authority beyond that provided by this Court for this bankruptcy case, she must obtain such appointment and authority under state law, in state court.

Juanita Maes may exercise all the rights and powers of a debtor and debtor-in-possession in a Chapter 13 case, on behalf of the Debtor, under 11 U.S.C. § 1303. Juanita Maes may execute all required bankruptcy documents as follows: "Jennie Adelle Maes by Juanita Maes as Guardian ad Litem by Court Order."

Without limitation to the foregoing, Juanita Maes may, on behalf of the Debtor: retain and instruct legal counsel for the Debtor; file and prosecute any Chapter 13 plan or modification thereto; file, prosecute, or defend any pleading, motion, objection, or response; seek conversion or dismissal of the Debtor's bankruptcy case; make payments under any Chapter 13 plan; file a verification of confirmable plan; request the entry of discharge; and take any other action on behalf of the Debtor in this bankruptcy case.

In the performance of her role as guardian ad litem, Juanita Maes shall be obligated to act as a fiduciary for the Debtor. Such fiduciary duties shall include, but are not limited to: the duty to act in accordance with the Debtor's reasonable expectations (to the extent actually known); the duty to act in the Debtor's best interests; the duty to act in good faith; the duty to act loyally for the Debtor's benefit; the duty to act with the care, competence, and diligence ordinarily exercised by agents in similar circumstances. Juanita Maes shall not be entitled to compensation for her role as guardian ad litem for the Debtor, unless otherwise permitted by Court Order.

The Debtor shall have the right to request termination of Juanita Maes' limited guardian ad litem role if the Debtor establishes that she is no longer incompetent and is able to prosecute and administer her own bankruptcy case. However, Juanita Maes' limited guardian ad litem role shall terminate only upon Court Order, including an order dismissing this case.

### VI. <u>Conclusion and Order</u>

For the foregoing reasons, the Court GRANTS the Motion to Determine Authority, in part. IT IS, THEREFORE, ORDERED:

1. The Chapter 13 Trustee's Objection to the capacity of Juanita Maes to act on behalf of the Debtor is OVERRULED;

2. The Chapter 13 Trustee's Objection to the Debtor's Chapter 13 Plan (Docket No. 2) is DENIED;

3. The Chapter 13 Trustee's request that the bankruptcy case be dismissed or converted to Chapter 7 is DENIED;

4. Juanita Maes is appointed as the guardian ad litem for the Debtor for the limited purpose of prosecuting and administering this bankruptcy case on behalf of the Debtor and according to the obligations, terms, and conditions set forth in this Order; and

5. The Debtor, by Juanita Maes as Guardian ad Litem by Court Order, shall file an Amended Chapter 13 Plan no later than May 29, 2020, addressing the objection of J.P. Morgan Chase Bank, N.A. (Docket No. 22).

6. By separate Order, the Court shall set a schedule for notice, objections, and a plan confirmation hearing.

DATED this 20th day of May, 2020.

BY THE COURT:

*Thomas B. McNamara*
Thomas B. McNamara,
United States Bankruptcy Judge